**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
_____

| | | |
|---|---|---|
| **JFS FT LLC,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **Case No. 11 CIV 0972 (BSJ)** |
| | ) | |
| **vs.** | ) | **ANSWER TO FIRST AMENDED** |
| | ) | **COMPLAINT** |
| **KYOSAY GLOBAL, LLC, an** | ) | |
| **Illinois Limited Liability Company,** | ) | |
| **KYOSAY GLOBAL, an Illinois** | ) | |
| **Partnership, STEVE BORRE, FRANK** | ) | |
| **LAZOWSKI, CAMERON REID,** | ) | |
| **ENTELLI CONSULTING, LLC and** | ) | |
| **DOES 1 THROUGH 20,** | ) | |
| | ) | |
| **Defendants.** | ) | |

_____

| | |
|---|---|
| **KYOSAY GLOBAL, LLC, an** | ) |
| **Illinois Limited Liability Company,** | ) |
| | ) |
| **Defendant/Counter-Plaintiff,** | ) |
| | ) |
| **vs.** | ) |
| | ) |
| **JFS FT LLC,** | ) |
| | ) |
| **Plaintiff/Counter-Defendant.** | ) |

_____

      Defendant, Cameron Reid ("Reid"), by his attorneys, answers Plaintiff's First Amended

Complaint as follows:

      1. Plaintiff JFS FT LLC ("JFS") is a New York Limited Liability Company with offices
in New York County.

**ANSWER:**    Reid has insufficient information to admit or deny paragraph 1.

2.      JFS is informed, believes and on the basis of such belief alleges that Kyosay Global, LLC is an Illinois limited liability company doing business at 1033 Skokie Boulevard, Suite 480, Northbrook, IL 60062.

**ANSWER:**     Admit.

3.      JFS is informed, believes and on the basis of such belief alleges that Kyosay Global is an Illinois partnership doing business at 1033 Skokie Boulevard, Suite 480, Northbrook, IL 60062.

**ANSWER:**     Denied, there is no limited partnership called Kyosay Global.

4.      JFS is informed, believes and on the basis of such belief alleges that Frank Lazowski is an individual and partner in Kyosay Global and principal of Kyosay Global, LLC doing business at 1033 Skokie Boulevard, Suite 480, Northbrook, IL 60062.

**ANSWER:**     Admit that Frank Lazowksi is an individual and denied as to the remainder of paragraph 4.

5.      JFS is informed, believes and on the basis of such belief alleges that Steve Borre is an individual and partner in Kyosay Global and principal of Kyosay Global, LLC doing business at 1033 Skokie Boulevard, Suite 480, Northbrook, IL 60062.

**ANSWER:**     Admit that Steve Borre is an individual and denied as to the remainder of paragraph 5.

6.      JFS is informed, believes and on the basis of such belief alleges that Cameron Reid ("Reid") is an individual who is an employee or partner in Kyosay Global and Kyosay Global, LLC who has his place of business at 1033 Skokie Boulevard, Suite 480, Northbrook, IL 60062 (Kyosay Global, LLC, Kyosay Global, Frank Lazowski, Steve Borre, Reid, collectively "Kyo say" or "Kyo say Defendants").

**ANSWER:**     Admit that Reid is an individual, an employee of Kyosay Global LLC and denied as to the remainder of paragraph 6.

7.      JFS is informed, believes and on the basis of such belief alleges that Entelli Consulting LLC, ("Entelli") is an Illinois limited liability company doing business at 4801 Emerson Ave., Suite 202, Palatine, IL 60067 (Kyosay and Entelli, collectively "defendants").

**ANSWER:**     Reid has insufficient information to admit or deny paragraph 7.

8.      JFS is currently unaware of the existence or non-existence or roles of Does 1 through 20 and will amend this complaint upon gaining such knowledge.

**ANSWER:**     Reid has insufficient information to admit or deny paragraph 8.

9.      JFS is in the business of providing specialized custom software that provides general ledger accounting and payroll processing to film and television productions.

**ANSWER:**    Reid has insufficient information to admit or deny paragraph 9.

10.      In April of 2009, Cameron Reid, of Kyosay Global, was introduced to JFS through a trusted security expert employed by a JFS related company to advise on the safety of proprietary data and information technology infrastructure.

**ANSWER:**

11.      The initial engagement was limited in scope and Reid was paid $5000 for expert computer source code de-compilation services and $9000 for additional software support in regard to then existing accounting software.

**ANSWER:**    Denied.

12. Following this preliminary engagement, JFS informed Reid of the fact that it was also in the market for a substantial software upgrade and was interested in purchasing custom payroll software.

**ANSWER:**    Denied.

13.      At all times JFS made clear to Reid that it was seeking to purchase a software application that would be serving as the heart and soul of the JFS business and its correct functioning would be essential to the operation of the business.

**ANSWER:**    Denied.

14.      At all times JFS went to great lengths to inform Kyosay of its software requirements, including in part, the following main functions: company maintenance, customer maintenance, billing, accounts receivable, vendor maintenance, accounts payable, check writing, purchase orders, employee maintenance, banking, budgeting, job costing, payroll and other tasks.

**ANSWER:**    Reid has insufficient information to admit or deny paragraph 14.

15.      At all times JFS and Kyosay understood that Kyosay was to deliver a finished software application to JFS.

**ANSWER:**    Reid has insufficient information to admit or deny paragraph 15.

16.      At all times, Reid, representing Kyosay, held himself and Kyosay out as expert computer consultants, and informed JFS that Kyosay was able to design, build, and provide JFS with such a system.

**ANSWER:**    Reid has insufficient information to admit or deny paragraph 16.

17.     By mid 2009, by oral agreement between the parties, Kyosay agreed to provide JFS with a custom payroll processing software application.

**ANSWER:**     Reid has insufficient information to admit or deny paragraph 17.

18.     In August 2009, Kyosay also agreed to supply JFS with a general ledger accounting application.

**ANSWER:**     Reid has insufficient information to admit or deny paragraph 18.

19.     From the time when Reid first began work in April 2009, until the time Kyosay agreed to provide JFS with software, Reid had spent time familiarizing himself with the software, officers, and staff of JFS and its related companies that share the same office.

**ANSWER:**     Denied.

20.     Reid had gained their trust and purportedly assessed their needs.

**ANSWER:**     Reid has insufficient information to admit or deny paragraph 20.

21.     During this time JFS had come to trust in and rely upon Reid's advice and claimed expertise to advise it upon its software needs.

**ANSWER:**     Reid has insufficient information to admit or deny paragraph 21.

22.     Since Reid first began working with JFS, given the role he accepted as software expert and assessor of JFS' needs, Reid became-and knew he had become a trusted insider at JFS.

**ANSWER:**     Reid has insufficient information to admit or deny paragraph 22.

23.     Prior to Kyosay's agreement to provide JFS with custom payroll software, Reid conducted an assessment and advised JFS of his findings.

**ANSWER:**     Denied.

24.     Because of Reid's role as an advisor to JFS, JFS believed he was providing them with objective advice.

**ANSWER:**     Reid has insufficient information to admit or deny paragraph 24.

25.     At all times JFS made clear and Reid/Kyosay understood that they were providing their assessments in order to guide JFS's software needs and that JFS would be relying on Reid's impartial and expert advice.

**ANSWER:**     Reid has insufficient information to admit or deny paragraph 25.

26.     At all times JFS followed the assessment and resultant recommendations of Reid/Kyosay as to what software designs were necessary and what design methodology should be used to produce the required software applications.

**ANSWER:**     Reid has insufficient information to admit or deny paragraph 26.

27.     During a later assessment, Reid/Kyosay explicitly advised against a much less work-intensive approach consisting of providing minor modifications to the existing JFS general ledger accounting software and instead advised JFS to produce a custom software general ledger application essentially from scratch, which it estimated would cost JFS approximately $600,000.00.

**ANSWER:**     Denied.

28.     At all times, Kyosay worked without a signed contract between JFS and Kyosay.

**ANSWER:**     Admit.

29.     During the course of the relationship between Kyosay and JFS, approximately 10 written contracts and revisions were drafted Kyosay, but none were acceptable to JFS and were accordingly not executed.

**ANSWER:**     Reid admits that approximately 16 written contracts and revisions were provided and that JFS refused to execute them, denied as to the remainder of paragraph 29.

30.     However, Kyosay promised to complete all of the functions and elements of the software including both the payroll and the general ledger systems by March 31, 2010.

**ANSWER:**     Denied.

31.     During the summer of 2009, on or about the time the oral contract was being formed between Kyosay and JFS, Kyosay informed JFS that it would require coders to assist in the development of the software. Kyosay recommended defendant Entelli Consulting LLC for this purpose.

**ANSWER:**     Denied.

32.     Entelli entered into a written agreement with JFS dated July 20, 2009 to, among other things, provide "Architecture and Sr. Developer" services, create system documentation, and provide production support and user training.

**ANSWER:**     Reid has insufficient information to admit or deny paragraph 32.

33.     At all times the parties understood that Kyosay was directing Entelli.

**ANSWER:**   Reid has insufficient information to admit or deny paragraph 33.

34.   No one at JFS had the knowledge, experience, or expertise to direct Entelli.

**ANSWER:**   Reid has insufficient information to admit or deny paragraph 34.

35.   Kyosay knew that no one at JFS had the knowledge, experience, or expertise to direct Entelli.

**ANSWER:**   Reid has insufficient information to admit or deny paragraph 35.

36.   Consequently, JFS relied on Kyosay to fully manage Entelli and report to JFS the status of Entelli's work.

**ANSWER:**   Reid has insufficient information to admit or deny paragraph 36.

37.   Kyosay knew that JFS relied on Kyosay to fully manage Entelli and report to JFS the status of Entelli's work.

**ANSWER:**   Reid has insufficient information to admit or deny paragraph 37.

38.   Accordingly, at all times, Kyosay was directly controlling, managing, supervising and directing the work of Entelli.

**ANSWER:**   Denied.

39.   At all times, the software was to be produced and delivered to JFS through the efforts of both Kyosay and Entelli.

**ANSWER:**   Denied.

40.   Although all defendants were paid on an hourly basis, at all times defendants understood they were being paid to produce a software application and its related deliverables for JFS.

**ANSWER:**   Denied.

41.   The deliverables were to include, but not be limited to, the functioning software application, any required hardware, the application's source-code, system documentation, a regression test suite, installation scripts, release notes, a requirements model, and a design model.

**ANSWER:**   Denied.

42.   Defendants failed to deliver any functional software or deliverables.

**ANSWER:**    Denied.

43.    Reid on behalf of Kyosay misrepresented his and Kyosay's qualifications and their ability to provide services as the Project Manager, Business Analyst, and Quality Assurance provider for the development of JFS's software.

**ANSWER:**    Denied.

44.    In May 2009, Reid told JFS, including CEO John Finn, Yara Maalanine and others, at the JFS offices in New York City, in sum and substance, that he and Kyosay have built accounting and payroll software systems in the past and could do so for JFS.

**ANSWER:**    Denied.

45.    Upon information and belief, Reid knew such statements to be false at the time of making them.

**ANSWER:**    Denied.

46.    In May 2009, Reid told JFS, including CEO John Finn, Yara Maalanine and others, at the JFS offices in New York City, in sum and substance, that he has built many payroll and accounting software systems for large companies who do accounting.

**ANSWER:**    Denied.

47.    Upon information and belief, Reid knew such statements to be false at the time of making them.

**ANSWER:**    Denied.

48.    In May 2009, Reid told JFS, including CEO John Finn, Yara Maalanine and others, at the JFS offices in New York City, in sum and substance, that he had the skills and expertise needed to perform the work required in delivering the required payroll and accounting software because he had worked at a public accounting firm before.

**ANSWER:**    Denied.

49.    Upon information and belief, Reid knew such statements to be false at the time of making them.

**ANSWER:**    Denied.

50.    Between June 2009 and September 2010 defendants were apparently performing services on for JFS.

**ANSWER:**    Admit.

51.     In reliance upon its belief that such services were being provided, JFS paid defendants not less than $862,000.00.

**ANSWER:**     Denied.

52.     Rather than complete the software as promised by March 31, 2010, defendants continually delayed the overall project and never completed anything with satisfactory results.

**ANSWER:**     Denied.

53.     At all times, there was little transparency in defendants' work process making it almost impossible for JFA to monitor what was actually progressing with the project.

**ANSWER:**     Denied.

54.     At all times, Kyosay represented to JFS that it would implement quality assurance (QA) procedures for the project.

**ANSWER:**     Reid admits that quality assurance procedures were implemented, denied as to the remainder of paragraph 54.

55.     Defendants never implemented any QA procedures.

**ANSWER:**     Denied.

56.     In August 20, 2010, when the project was overdue by nearly 6 months, Kyosay informed JFS that the system was not complete or adequate and that an entirely different approach should be taken.

**ANSWER:**     Denied.

57.     Kyosay recommended that JFS should implement minor modifications to its existing general ledger software.

**ANSWER:**     Denied.

58.     Such was not only different than the approach it advised following its earlier assessment, but was directly contrary to its earlier advice in August of 2009 that recommended against this approach.

**ANSWER:**     Denied.

59.     This alternative approach had an estimated cost of under $20,000.00.

**ANSWER:**     Reid has insufficient information to admit or deny paragraph 59.

60.   By September 2010, over 6 months behind schedule, neither defendant had produced usable code or operational software and it was clear that defendants had breached their agreements and had not cured or even begun to reasonably cure the same.

**ANSWER:**   Denied.

61.   Defendants' products failed to meet the requirements of the agreements in that the software was unusable, of extremely poor quality, not designed to the usual and customary standards of such software, and not functional for the purpose for which it was intended.

**ANSWER:**   Denied.

62.   Shortly after termination of the Kyosay/Entelli project, Kyosay's managing partner, defendant Frank Lazowski, contacted the CEO of JFS, John Finn.

**ANSWER:**   Denied.

63.   During such contact, Lazowski admitted to Mr. Finn that the operating procedures defendants had implemented for this project were not up to the normal industry standards nor Kyosay's own standards including, but not limited to, quality assurance, job tickets, bug tracking, bug fixing tracking, and in general, proper communication tools to ensure that a project was completed on time.

**ANSWER:**   Denied.

64.   The incurred cost to JFS for the payroll software to be produced by defendants was approximately $619,000.00.

**ANSWER:**   Reid has insufficient information to admit or deny paragraph 64.

65.   JFS paid approximately $255,000.00 to Kyosay for the payroll software

**ANSWER:**   Denied.

66.   JFS paid approximately $364,000.00 to Entelli for the payroll software.

**ANSWER:**   Reid has insufficient information to admit or deny paragraph 66.

67.   The incurred cost to JFS for the general ledger software to be produced by defendants was approximately $243,000.00.

**ANSWER:**   Reid has insufficient information to admit or deny paragraph 67.

68.   JFS paid approximately $53,000.00 to Kyosay for the general ledger software.

**ANSWER:**     Denied.

69.     JFS paid approximately $190,000.00 to Entelli for the general ledger software.

**ANSWER:**     Reid has insufficient information to admit or deny paragraph 69.

70.     Kyosay further advised JFS that it was necessary to spend an additional $50,000 to contract with other software implementation firms.

**ANSWER:**     Reid has insufficient information to admit or deny paragraph 70.

71.     JFS did so based on the Kyosay's advice.

**ANSWER:**     Reid has insufficient information to admit or deny paragraph 71.

72.     This additional cost, made in reliance on Kyosay's advice and instructions, resulted in paid-for-services that were never used because defendants failed to produce the software that was a necessary precondition to the use of such services.

**ANSWER:**     Denied.

73.     In September, 2010, defendants' breach forced JFS to find a new software design firm to create the software it paid nearly $900,000.00 to create.

**ANSWER:**     Reid has insufficient information to admit or deny paragraph 73.

74.     The new firm has had to start essentially from scratch and was unable to use any significant amount of the code, documentation, or any other materials produced by defendants.

**ANSWER:**     Kyosay has insufficient information to admit or deny paragraph 74.

## FIRST CAUSE OF ACTION
(Breach of Contract - Against Kyosay/Kyosay Defendants))

Reid has responded to Count I by way of its simultaneously filed motion to dismiss.

## SECOND CAUSE OF ACTION
(Breach of Contract - Against Entelli)

Count II is not directed towards this Defendant and therefore no response is necessary.

## THIRD CAUSE OF ACTION
(Breach of Implied Warranty of Fitness for a Particular Purpose under *V.C.C.* §
..., 2-315 - Against All defendants)

Reid has responded to Count III by way of its simultaneously filed motion to dismiss.

## FOURTH CAUSE OF ACTION
(Breach of Express Warranty by Affirmation, Promise, Description Pursuant to
U.C.C. § 2-313 - Against All defendants)

Reid has responded to Count IV by way of its simultaneously filed motion to dismiss.

## FIFTH CAUSE OF ACTION
(Breach of Warranty of Merchantability - Against All defendants)

Reid has responded to Count V by way of its simultaneously filed motion to dismiss.

## SIXTH CAUSE OF ACTION
(Unjust Enrichment - Against *Kyosay/Kyosay* Defendants)

Reid has responded to Count VI by way of its simultaneously filed motion to dismiss.

## SEVENTH CAUSE OF ACTION
(Unjust Enrichment - Against Entelli)

Count VII is not directed towards this Defendant and therefore no response is required.

## EIGHTH CAUSE OF ACTION
(Negligence - Against *Kyosay/Kyosay* Defendants)

Reid has responded to Count VIII by way of its simultaneously filed motion to dismiss.
.

## NINTH CAUSE OF ACTION
(Negligent Misrepresentation - Against Kyosay/Kyosay Defendants)

150.     JFS re-alleges paragraphs 1 through 149 as if set forth fully herein.

**ANSWER:**     Reid repeats and re-alleges paragraphs 1 through 149 as though fully set forth herein.

151.     Kyosay's misrepresentation stemmed from its special relationship with JFS.

**ANSWER:**     Denied.

152.     Kyosay stood in a special position of confidence and trust with respect to JFS.

**ANSWER:**     Reid has insufficient information to admit or deny paragraph 152.

153.      Kyosay held unique or specialized expertise.

**ANSWER:**     Reid has insufficient information to admit or deny.

154.   JFS relied on the advice given by Kyosay.

**ANSWER:**   Reid has insufficient information to admit or deny paragraph 154.

155.   The Kyosay defendants had a duty to use the reasonable care customary to those in the technology industry to impart correct information.

**ANSWER:**   Paragraph 155 is a legal conclusion and therefore no answer is required.  To the extent an answer is required, denied.

156.   The information imparted by Kyosay was false and without a reasonable basis, and JFS reasonably relied on that information to its detriment.

**ANSWER:**   Denied.

157.   In advising JFS on its software needs, Kyosay made statements, offered advice, and provided documents knowing that such statements, advice and documents were necessary to JFS for the particular purpose of choosing what software path to take.

**ANSWER:**   Denied.

158.   In advising JFS on its software needs, Kyosay knew that the statements, advice, and documents it provided were made for the benefit of JFS.

**ANSWER:**   Reid has insufficient information to admit or deny paragraph 158.

159.   In advising JFS on its software needs, Kyosay knew that JFS would rely on its statements, advice, and documents and knew JFS would be damaged if they were inaccurate.

**ANSWER:**   Reid has insufficient information to admit or deny paragraph 159.

160.   Kyosay was therefore under a duty to JFS to take reasonable care to ensure that the statements, advice and documents it provided were accurate, including, but not limited to the Kyosay defendants' statements that they had the expertise to design, implement, deliver, and project manage the production of software and its accompanying deliverables and to provide JFS with a comprehensive accounting system in the timeframe it presented.

**ANSWER:**   Paragraph 160 is a legal conclusion and therefore no answer is required.  To the extent an answer is required, denied.

161.   The Kyosay defendants breached this duty.

**ANSWER:**   Denied.

162.   JFS in fact relied upon the false, inaccurate, and misleading statements, advice and documents provided by Kyosay and was harmed thereby.

**ANSWER:**   Denied.

163.   Kyosay told JFS that the payroll and accounting software application would be functional by March 31,2010, but it was not.

**ANSWER:**   Denied.

164.   Kyosay advised JFS to purchase custom general ledger software from scratch that it represented would cost approximately $600,000.00 in total.

**ANSWER:**   Denied.

165.   Roughly one year and over $900,000.00 later, Kyosay reversed its advice to recommend a patch to the existing JFS general ledger software that was estimated to cost less than $20,000.00.

**ANSWER:**   Denied.

166.   Kyosay's breach of their duty resulted in needless spending of money by JFS and lost time.

**ANSWER:**   Paragraph 166 is a legal conclusion and therefore no answer is required.  To the extent an answer is required, denied.

167.   By reason of the foregoing, Plaintiff was injured in an amount of not less than $912,000.00 or according to proof at trial.

**ANSWER:**   Denied.

**TENTH CAUSE OF ACTION**
(Fraudulent Inducement - Against *Kyosay/Kyosay* Defendants)

Reid has responded to Count X by way of its simultaneously filed motion to dismiss.

Respectfully submitted,

CAMERON REID


By: /s/ Kevin R. Krantz_____
      Stahl Cowen Crowley Addis, LLC

Kevin R. Krantz
Stahl Cowen Crowley Addis, LLC
55 W. Monroe Street
Suite 1200
Chicago, IL 60603
312-641-0060

Brent A. Burns (BB-5155)
Law Offices of Brent A. Burns, LLC
27 Whitehall Street, 4th Floor
New York, NY 10004-2117
(201) 768-2700
BBurns@babfirm.com

*Attorneys for Kyosay Global, LLC, Cameron Reid,*
*Steve Borre and Frank Lazowski*