UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------

| | |
|---|---|
| JFS FT LLC, | Case No. 11 Civ 0972 (BSJ) |
| Plaintiff, | |
| vs. | PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT ENTELLI CONSULTING LLC'S MOTION TO DISMISS THE FIRST AMENDED COMPLAINT UNDER F.R.C.P. 12(b)(6) |
| KYOSAY GLOBAL, LLC, an Illinois Limited Liability Company, KYOSAY GLOBAL, an Illinois Partnership, STEVE BORRE, FRANK LAZOWSKI, CAMERON REID, ENTELLI CONSULTING LLC, an Illinois Limited Liability Company, and DOES 1 THROUGH 20, | |
| Defendants. | |

-----------------------------------------------------------
KYOSAY GLOBAL, LLC, an Illinois Limited Liability Company,

    Defendant/Counter-Plaintiff,

vs.

JFS FT LLC,

    Plaintiff/Counter-Defendant.
-----------------------------------------------------------

Plaintiff, JFS FT LLC, Inc., hereby opposes Entelli Consulting LLC's ("Entelli" or "defendant") motion to dismiss Plaintiff's First Amended Complaint ("FAC"). Although defendant addresses its motion only to the entire FAC, claims against defendant are contained in the Second, Third, Fourth, Fifth and Seventh counts.

**Standard Of Review**

When considering a motion to dismiss under Rule 12(b)(6), the court must accept all the allegations in the complaint as true and draw all reasonable inferences in the plaintiffs favor.[1] A complaint need only allege enough facts to state a claim to relief that is plausible on its face.[2]

**BACKGROUND FACTS**

In July 20, 2009, JFS and defendant entered into an agreement to fulfill JFS' purchase of a custom software application.  The agreement was composed of a "Client Agreement"[3] and a Work Order included as Exhibit A to the agreement.[4]  The agreement described certain aspects of the relationship between the parties, but left the Work Order to specify the duties and responsibilities of defendant and its personnel.  The work order defines defendant's responsibilities as (a) serving as the "Sr. Developer," (b) being "Involved in requirement gathering," (c)  "documentation," (d) "design[ing] the

---

1 *Holmes v. Grubman,* 568 F.3d 329, 335 (2d Cir.2009)*; Fresh Direct, LLC v Blue Martini Software, Inc.*, 7 AD3d 487, 488 (2d Dept 2004).

2 *Twombly v. Bell Atl. Corp.,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007).

3 Entelli Memorandum,, Exhibit A, Client Agreement.

4 Finn Affidavit re Entelli, Exhibit A, Work Order.

architecture of [the] system on .Net platform," (e) creating "system documentation," (f) providing, "production support," and (g) "training."[5]

According to the owner of JFS, John Finn, it was always JFS' understanding that it hired defendant to provide it with the products and services described in the Work Order.[6]

From shortly after entering into the agreement in July 2009 until September 2010, JFS paid defendant for work it claimed it performed. Throughout such period, JFS also informed defendant of its dissatisfaction and need for correction of portions of the goods and services provided. At the same time, JFS recognized that it would be impossible to fully evaluate the entire software application until its final or near final completion. By September 2010, JFS after independent evaluation concluded that the goods and services produced by defendant were not as specified and were defective, that defendant had breached the agreement, and that defendant must be terminated.[7]

**ARGUMENT**

Defendant's motion to dismiss advances two arguments. First, defendant argues that section seven of the agreement—language disclaiming

---

[5] Finn Affidavit re Entelli, ¶¶ 4-7; Ex. A.
[6] Finn Affidavit re Entelli, ¶ 8.
[7] Finn Affidavit re Entelli, ¶¶ 20-23.

liability related to the selection and substitution of technical personnel—protects it from *all* liability, including from non-performance or defective work. Second, defendant argues that section three of the agreement that delineates a specific and technical form for "accepting" or not accepting the work performed by defendant means that since JFS paid defendant that defendant is immune from any claims for inadequate work or non-performance. However, for the reasons set forth below, neither argument is correct and neither section seven nor section three of the agreement operates as a bar to plaintiff's claims set forth in the FAC.

**I.   Section Seven Of The Agreement Does Not Confer Blanket Liability Protection For All Acts Or Performance Of Defendant's Personnel, But Only Addresses The Selection Of Personnel.**

Preliminarily, to the extent the Court finds the below-discussed terms of the Client agreement or Work Order to be ambiguous, the Court must look to external evidence to determine the meaning of the contact.[8] However, at a motion to dismiss, this requires resolving any ambiguities in favor of the allegations in the complaint and drawing inferences in the plaintiff's favor.[9]

---

8 *Pouch Term., Inc. v Hapag-Lloyd (Am.) Inc.*, 172 AD2d 735, 736 (2d Dep't 1991)(" Where, however, the language of a contract is susceptible of varying but reasonable interpretations, the parties may submit extrinsic evidence as an aid in construction, and the resolution of the ambiguity is for the trier of fact.").

9 *Holmes v. Grubman,* 568 F.3d 329, 335 (2d Cir.2009).

4

Section Seven of the agreement governs the selection and substitution of personnel. It concerns such personnel's "qualifications, experience, and project requirements.". It states that "[t]he work to be performed by the technical personnel providing services under this agreement shall be set out by Client and stated in the Work Order." It further states that the personnel shall be under defendant's "primary control." Finally, it states that because defendant will offer JFS the opportunity to interview the provided technical personnel "prior to the commencement of any services," defendant shall have "no liability to [JFS] if such personnel are determined by [JFS] not to meet its requirements…"[10]

Defendant argues that this clause broadly means, "defendant shall not be held liable for the performance of its technical personnel."[11] However, such reading is overreaching and is not in keeping with the plain language or the other components of the agreement.

JFS, by contrast, understands section seven to mean that defendant may be immune from liability arising from the failure of defendant's technical personnel to possess the "qualifications, experience, and project requirements" requested by JFS. In other words, since defendant would give JFS an opportunity to interview the personnel in advance to determine qualifications,

---

10 Entelli Memorandum, Ex. A, Client Agreement §7.
11 Entelli Memorandum, p. 7.

defendant would not be liable for providing JFS with an unlicensed technician if it required a licensed one or based on the absence of a particular academic degree or type of work experience required.  In short, the provision governs *who* is selected (i.e., their "qualifications"), not *what* defendants' workers *do* once selected (i.e., their performance).[12]

The defendant's reading of section seven defies common sense, ignores such section's reference to the Work Order and section thirteen, and overlooks the fact that the selection process occurs *prior* to the commencement of services.

It is not tenable that defendant's own personnel, once selected, could literally not work, or perform terribly and still be immune from liability.  Defendant's interpretation of the clause would immunize its personnel from all liability for all actions whether criminal, fraudulent, negligent, grossly negligent, or incompetent.  There could be no liability even for theft as defendant construes the agreement.  Such an interpretation is unviable and against public policy.[13]

---

12 Finn Affidavit re Entelli, ¶¶13-14.

13 *See Colnaghi, U.S.A., Ltd. v. Jewelers Protection Services, Ltd.*, 81 N.Y.2d 821, 823 (1993)(barring contractual immunity for gross negligence or intentional wrongdoing); *Sommer v. Fed. Signal Corp.*, 79 N.Y.2d 540, 554 (1992)(barring contractual immunity from reckless indifference).

In addition, defendant's reading ignores the presence of the Work Order as well as section thirteen of the agreement. It is a well established rule of contractual construction that the "interpretation of a contract is favored which will make every part of it effective or which gives meaning to every provision."[14]

If defendant's employees, once selected, could do no wrong, then the very purpose of the Work Order would be stripped of meaning. Why set out a list of "Responsibilities" if in fact there is no responsibility to perform at all? Defendant's reading vitiates the agreement's reference to the Work Order's description of the work defendant is to perform. It is illogical to describe work to be performed if there is no obligation to perform it.

Similarly, the defendant's construction conflicts with section thirteen of the agreement, entitled "Liability and Indemnification," which memorializes the party's terms regarding issues including personal injury and intellectual property liability. If section seven means that no liability can attach to defendant, there would be no need to discuss the terms of liability in section thirteen. The defendant's reading of section seven, at a total bar to liability, would effectively moot section thirteen.

---

14 22 N.Y. Jur. 2d Contracts § 249 (citing, e.g., *Acme Supply Co., Ltd. v. City of New York*, 39 A.D.3d 331, 834 N.Y.S.2d 142 (1st Dep't 2007); *Mionis v. Bank Julius Baer & Co., Ltd.*, 301 A.D.2d 104, 749 N.Y.S.2d 497 (1st Dep't 2002).

In addition, the plain language of section seven refers to the time period "prior to their [the technical personnel] commencement of any services for [JFS]." It is this sentence which precedes the phrase "shall have no liability to [JFS] if such personnel are determined by [JFS] not to meet its requirements…" Again, JFS reasonably understood this language to concern only the selection of adequate and qualified personnel, but not to relate to the performance and work product of those personnel *after* their selection.[15]

Finally, the factual question remains of whether or not defendant complied with its obligations under section seven which required defendant to provide JFS with an opportunity to interview the technical personnel.[16] As to this, JFS disputes such fact and states that it neither interviewed any defendant personnel nor was given an opportunity to do so.[17]

In the FAC, JFS does not seek damages based on improper selection or the absence of necessary qualifications of defendant's personnel. Instead, it alleges their failure to perform the duties described in the Work Order.[18] A suit on these grounds is permissible under and not waived by the agreement.

Accordingly, because section seven of the agreement is not a bar or waiver of any claims for non-performance or defective performance by

---

[15] Finn Affidavit re Entelli, ¶¶13-14.
[16] Entelli Memorandum, p. 5.
[17] Finn Affidavit re Entelli,¶ [16].
[18] FAC ¶¶86-91.

defendant's personnel, it does not defeat plaintiff's claims. Therefore the court should deny defendant's motion to dismiss.

## II.     The Terms of Section Three Of The Agreement Do Not Provide An Absolute Bar To Liability And Were Not Followed By Either Party.

Defendant also argues that section three of the agreement operates as a complete bar to liability. However, section three merely concerns the timely payment for services rendered. Its purpose is to determine "[JFS's] agreement to pay [defendant]".[19] It also makes use of the phrase "acceptance of the work," a term of art among merchants and defined by the New York Uniform Commercial Code ("UCC") as discussed below.

As an initial matter it is important to note that while the FAC alleges that defendant breached the agreement by failing to perform, defendant's motion to dismiss does not raise the defense of performance. Instead, defendant argues that to the extent a breach did occur, it is immune from liability. Again, defendant is not claiming it performed adequate work, but only that it cannot be liable for any inadequacies. The use of section three as a defense is, by defendant's own terms, not a statement that defendant performed the work set forth in the Work Order—a factual question, but instead is a claim that it cannot be liable for its acts because, according to defendant, "[JFS] expressly agreed to waive all existing claims concerning the

---

19 Entelli Memorandum, Exhibit A, § 3.

technical personnel's performance upon providing defendant with payment for the performance of the technical personnel."[20]  Defendant here asserts a waiver-of-claims defense, not a defense that it performed.

But defendant is wrong to insert the concept of waiver into section three.  The language of section three does not use the word waiver nor does its language describe concepts of performance, liability, or waiver.  Instead it merely states that payment must be made for the work that is accepted and further presents a formal method for accepting the work or for explaining why the work was not acceptable. Furthermore section three does not impose an exclusive method for communicating inadequacies.  Section three is much more limited in effect than defendant proposes and the concept of waiver is delimited by the UCC.

The UCC speaks directly on the topic of the acceptance of goods and liability.  Where non-conforming goods are accepted, they may still be rejected if such acceptance was made on "the reasonable assumption that the non-conformity would be seasonably cured." Furthermore, "acceptance does not of itself impair any other remedy provided by this Article for non-conformity."[21] Upon acceptance of a tender of goods, the buyer, here JFS, "must within a

---

[20] Entelli Memorandum, p. 8.
[21] New York Uniform Commercial Code ("UCC") § 2-607(2).

reasonable time after he discovers or should have discovered any breach notify the seller of breach or be barred from any remedy."[22]

In this case, JFS notified defendant during the course of the work when the software was inadequate[23] and when it became clear the entire product was deficient.[24]

JFS always notified defendant of problems with the work upon their discovery.  At the same time, it is the nature of complex software development that work is delivered in components and that as a result it may require the accumulation of various components before the full system can be assembled and evaluated.[25]  Thought the course of the work, JFS paid for each component while simultaneously informing defendant of any problems with the work.[26]

However, the course of conduct of both parties during at all times, was to abandon the formal acceptance process described in section three.  Section three, by its explicit terms, requires defendant to provide its technical personnel printed forms to thereafter be submitted weekly JFS, showing time records.  JFS was then to place its signature upon this form in order to accept the work performed.  Any refusal to accept was to be written down on that

---

22  UCC § 2-607(3)(a).

23  Finn Affidavit re Entelli, ¶21.

24  Finn Affidavit re Entelli,  ¶ 23.

25  Finn Affidavit re Entelli,  ¶ 21.

26  Finn Affidavit re Entelli,  ¶¶ 21-22.

11

week's time record form along with a written explanation of the reasons the work was not acceptable.[27]

However, neither party did any of this.[28]  The defendant technical personnel never received a single time record form signature from JFS.[29] Furthermore, defendant neither claims it did so, nor submits any time records in its moving papers.  In addition to failing to submit signed time record forms, defendant's papers lack any time record forms at all.  And without the benefit of discovery, JFS would be unable to examine defendant as to the authenticity of any alleged time record forms, signed or otherwise.

Moreover, throughout the project JFS made numerous complaints and voiced its dissatisfaction with the work defendant personnel produced but always did so during face-to-face meetings, telephone calls, or via e-mail. This course of dealing continued throughout the life of the engagement without objection.[30]

Just as section seven fails to do as defendant argues, section three of the agreement is also not a bar or waiver of any claims for non-performance or

---

[27] Entelli Memorandum, Ex. A, Client agreement § 3.

[28] Finn Affidavit re Entelli, ¶ 20.

[29] Finn Affidavit re Entelli, ¶ 20.

[30] Finn Affidavit re Entelli, ¶ 20; *See also* New York Uniform Commercial Code § 2-208 (considering course of performance in determining contractual meaning); *Brooklyn Pub. Lib. v City of New York*, 250 NY 495, 501 (1929)(applying course of conduct to terms of contract); 22 N.Y. Jur. 2d Contracts § 216 (discussing applying course of conduct of parties to the meaning of the contract).

defective performance by defendant's personnel and does not defeat plaintiff's claims. Therefore the court should deny defendant's motion to dismiss.

### III.     Defendant Fails To Address The Causes Of Action Based On Warranties Or Unjust Enrichment.

Counts three through five of the FAC are for breach of the implied warranty of fitness for a particular purpose; breach of express warranty by affirmation, promise, or description; and breach of warranty of merchantability, respectively.  However, defendant fails to address these counts in its papers.  Crucially, the agreement itself is devoid of any waiver or disclaimer of any warranties for its software, be they implied or express.  It is well established that a seller must put a buyer on notice if the seller is to disclaim implied, express, or merchantability warranties.[31]

Also, defendant does not attempt to explain why the claim for unjust enrichment claim in the seventh cause of action against it must be dismissed. Such count is explicitly pled in the alternative: "to the extent this court finds for any reason that a contact does not govern the relationship between the parties…"[32] In such an event, along with the entire agreement, the contractual

---

31 *See* Uniform Commercial Code Law § 2-316(2-3)(requiring particular written language to exclude warranties); *Moore v Schlossman's, Inc.*, 5 Misc 2d 693, 696 (NY Mun Ct 1957)("Furthermore, 'the controlling principle is clear, the buyer must have been given reasonable notice of the intended exclusion before the bargain is complete * * * the disclaimer of warranty by the seller must be either known by the buyer or he must be chargeable with knowledge if the facts are such that a warranty would exist had there not been a disclaimer.' Williston on Sales").

32 FAC ¶119.

provisions of Sections Three and Seven would not apply.  There is no reason therefore to dismiss the seventh cause of action for unjust enrichment against defendant.

**CONCLUSION**

For all of the foregoing, defendant's motion to dismiss the First Amended Complaint should be denied in full.

Dated:   New York, New York
June 28, 2011

_____

Ravi Ivan Sharma, RS2064
Attorney for plaintiff, JFS FT LLC
200 Park Avenue South, Suite 1511
New York, NY 10003-1536
212 537 5957