UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------

| | |
|---|---|
| JFS FT LLC, | Case No. 11 Civ 0972 (BSJ) |
| Plaintiff, | |
| vs. | AFFIDAVIT OF JOHN FINN IN OPPOSITION TO ENTELLI CONSULTING LLC'S MOTION TO DISMISS |
| KYOSAY GLOBAL, LLC, an Illinois Limited Liability Company, KYOSAY GLOBAL, an Illinois Partnership, STEVE BORRE, FRANK LAZOWSKI, CAMERON REID, ENTELLI CONSULTING LLC, an Illinois Limited Liability Company, and DOES 1 THROUGH 20, | |
| Defendants. | |

--------------------------------------------------------

KYOSAY GLOBAL, LLC, an Illinois Limited Liability Company,

    Defendant/Counter-Plaintiff,

vs.

JFS FT LLC,

    Plaintiff/Counter-Defendant.

--------------------------------------------------------

STATE OF NEW YORK    )
                               ) ss.:
COUNTY OF NEW YORK   )

    JOHN FINN, being duly sworn, deposes and says:

1.    I am the CEO of Plaintiff JFS FT LLC ("JFS") in this action.  I am personally familiar with the matters set forth herein and make this affidavit in opposition to Defendants' motions to dismiss.

2. A general statement of the facts of this case can be found in my affidavit sworn to June 27, 2011, and filed with this Court in response to the separate motion to dismiss by Kyosay Global, LLC, Cameron Reid, Frank Lazowski and Steve Borre also pending before this Court, and submitted herewith in opposition.

3. As set forth in the First Amended Complaint ("FAC"), in the summer of 2009, Kyosay advised me to hire Entelli to aid in the production of software we were purchasing.

**The Work Order**

4. Following this recommendation, a representative of Entelli contacted me in mid-July, 2009, and we later entered into a Client Agreement that included as its Appendix A, a Work Order. Both the Client Agreement and the Work Order are dated July 20, 2009. The first paragraph of the Client Agreement specifically references and incorporates the Work Order.

5. Although Entelli attached a copy of the Client Agreement to their motion to dismiss, they omitted the agreement's "Appendix A", the Work Order, attached hereto as **Exhibit A**.

6. While the Client Agreement sets out, among other things, the process whereby Entelli would select personnel for the engagement, it is the Work Order that sets forth the work Entelli promised its personnel would perform.

2

7.   The Work Order includes a "Description of Services" that lists both the "type of services to be provided" and the worker's "Responsibilities."  The listed Responsibilities include serving as the Sr. Developer, being "Involved in requirement gathering, documentation and design the architecture of system on .Net platform," creating "system documentation," and providing, "production support as well as user training."[1]

8.   At all times JFS understood the purpose and function of the Worker Order to be a statement of the work that Entelli promised it would perform in exchange for payment.

9.   It was never JFS' understanding of the terms of the contract that Entelli could fail to perform the work described in the Work Order and still be entitled to payment.

**Section Seven of the Client Agreement**

10.   At no time did JFS understand section 3 and 7 of the agreement that Entelli now asserts in its defense to provide it with a blanket defense against all liability, regardless of performance or product.

11.   In general, the gravamen of the complaint against Entelli is that it failed to perform, did not deliver the promised product, and performed negligently, thereby breaching our agreement.

---

1 *See* Exhibit A, hereto.

12.     In raising the defense of section seven of the Client Agreement, Entelli misunderstands the complaint.  JFS is not claiming, as Entelli proposes, that its workers lacked some necessary qualification.  Instead, JFS is claiming Entelli and its employees did not perform the work the Work Order bound them to perform.  There is a difference.

13.     JFS has always understood that section seven only protects Entelli from claims of placing unqualified technical personnel to work on the product.  As such, JFS understood the meaning of this provision to protect Entelli against any claim that one of their employees lacked some required degree, certification, license, or skill set (i.e. if they provided us with an unlicensed electrician, for example, although we requested and required a licensed one).

14.     But JFS does not, and never did, understand that provision to mean that an otherwise qualified Entelli employee could fail to perform work or provide faulty work and that Entelli would nonetheless still be protected against liability or claim for refund of payment for such lack of work or faulty product.  JFS did not understand the provision to provide Entelli with immunity from all liability for all actions taken by its personnel whether criminal, fraudulent, negligent or grossly negligent, or incompetent.

15.     In short, JFS understood section seven to concern the selection and qualifications of Entelli employees and not to address their work product.

16. In addition, while section seven states that JFS had the opportunity to interview the technical personnel, no such interview ever actually occurred and to my knowledge Entelli never presented JFS with a "candidate pool".[2]

**Section Three of the Client Agreement**

17. Entelli's assertion of section three of the Client Agreement as a defense is based upon a misunderstanding and misstatement of the facts of what actually occurred.

18. Entelli quotes the relevant portion of Section Three as reading, "[JFS'] approval of such time records…shall constitute acceptance of the work performed by technical personnel and [JFS'] agreement to pay [Entelli] as stated herein."[3]

19. But the omitted language is important. Upon inspection of section three, the agreement requires that the approval process requires a signature on the timesheet, or in the case of disapproval, that the disapproval be noted on the time record along with "a written explanation of the reasons the work was not acceptable…."

20. In practice, during the full course of the engagement, Entelli never once sought or obtained a signature from JFS on any of its timesheets. Additionally, while JFS consistently informed Entelli and Kyosay of its complaints with the work, we never wrote these complaints down on the time record. But we did complain and inform Entelli of our dissatisfaction with the work and with what was required to

---

2 Entelli Memorandum. p. 5.
3 Entelli Memorandum. p. 2.

bring it up to our standards. These complaints were made via email, face-to-face at meetings, or over the phone. At no time did Entelli ever object to this method. The time sheets were sent back and forth via email, and email was one of the main methods of discussing the work. To the best of my knowledge, we never engaged one another with written notes on timesheets.

21. Although we did complain about certain aspects of the work, there were other aspects that we were unable to evaluate until the full code near completion. In the process of complex software development, there are many separate components and many aspects of the final software product that cannot be evaluated along the way, but must be reviewed at the time of the delivery of the final product; for example, latent defects.

22. Consequently, we of course paid for the work as the project progressed in order to keep it moving along. That said, we did not and were not in a position to approve of the work in some larger or final sense. JFA at all times sought, expected, and understood that it was buying a functional piece of software that performed its required functions. I expected Entelli, along with Kyosay, who recommended Entelli, to build and provide a software product. I believe this is made clear by the statement of work as well as all the dealings between the parties.

23. By September 2010, we felt we had received enough components and pieces of the software to evaluate the full product and we found it fatally deficient.

24. We maintained only one Entelli employee after that time, only in the hopes of having some of Entelli's work and knowledge, if any, of the product transferred to the new developer we hired to cover and provide the software. Such was also in vain as Entelli's final employee failed to assist the new developer in any meaningful way. Entelli was fully terminated in mid-April 2011.

WHEREFORE, I respectfully request that this Court DENY Entelli's motions to dismiss.

_____
JOHN FINN

Subscribed and sworn to before me
this 28th day of June, 2011
by John Finn, known to me.

_____
Notary Public

Ravi Ivan Sharma
Notary Public - State of New York
Qualified in New York County
02SH6221466 - Comm. Exp. 5/3/2014

# EXHIBIT A

# Entelli
## CONSULTING LLC

## STAFFING SERVICES AGREEMENT WORK ORDER

### 1. PARTIES:

| | | | |
|---|---|---|---|
| **Entelli Consulting LLC:** | Address: | 4801 Emerson Avenue, Suite 202, Palatine IL 60067 | |
| FedId: 36-4305426 | Telephone: | (847) 348-7780 x 107 | Fax: (847) 348-7790 |
| | Attention: | Chirag Patel | Email: chirag@entelli.com |

| | | | |
|---|---|---|---|
| **Client: JFS FT, LLC** | Address: | 124 Bobhall Rd, Bovina, NY 13740 | |
| FEDID: 26-4032303 | Telephone: | 212-206-1099 | |
| | Attention: | John Finn | |

### 2. DESCRIPTION OF SERVICES (continue on separate pages if necessary):

<u>Name of Contractor's Employee:</u> **Vamsi Garuda**

<u>Type of services to be provided:</u> **Developer**

<u>Responsibilities</u>:
- Architecture and Sr. Developer for FoxPro to .Net conversion project
- Involved in requirement gathering, documentation and design the architecture of system on .Net platform
- Create system documentation and production support as well as user training.

<u>Location where services are to be performed:</u>   Remote work as appropriate and at JFA Films, 333 Hudson St, Suite 201, New York, NY 10013

<u>Hours during which services are to be rendered:</u> **9.00 a.m to 5.30 p.m**

### 3. TERM:

| | | | |
|---|---|---|---|
| Commencement Date: | **08/03/2009** | Expiration Date: | **Open** |

### 4. PAYMENT TERMS (continue on separate pages if necessary):

**A. Billing Rates (check the appropriate box or boxes):**

- [ ] $ 90 Per <u>hour</u>           (e.g., hour, day, week, month)
- [ ] Estimated maximum funds/hours allocated under this work Order as Lump Sum for completion of services on the Project are: Lump Sum $        (        hours).
- [ ] Other (describe below or on separate attachment):

**B. Invoicing and Payment:**

Frequency of invoicing:  **Weekly**
(e.g., weekly, bi-weekly, monthly, upon completion)

Invoice requirements (e.g., week ending date, amount of hours): **week ending date**

Payment Terms:  15 **days**

### 5. OTHER:

### CLIENT SIGNATURE

By signing below, Subcontractor acknowledges that it has read this entire Work Order, and understands its terms and conditions, and agrees to all of such terms and conditions.

| X _____ | John Finn | Owner | _____ |
|---|---|---|---|
| Signature | Name | Title | Date |

### ENTELLI SIGNATURE

By signing below, Entelli acknowledges that it has read this entire Work Order, and understands its terms and conditions, and agrees to all of such terms and conditions.

| X _____ | Chirag Patel | Principal | 07/20/2009 |
|---|---|---|---|
| Signature | Name | Title | Date |