UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JFS FT LLC, ) | |
| ) | Case No. 11 CV 0972 (BSJ)(GWG) |
| Plaintiff, ) | |
| ) | REPLY IN SUPPORT OF MOTION |
| ) | TO DISMISS PURSUANT |
| v. ) | TO F.R.C.P. 12(b)(6) |
| ) | |
| KYOSAY GLOBAL, LLC, an Illinois ) | |
| Limited Liability Company, KYOSAY ) | |
| GLOBAL, an Illinois Partnership, STEVE ) | |
| BORRE, FRANK LAZOWSKI, CAMERON ) | |
| REID, ENTELLI CONSULTING LLC, an ) | |
| Illinois Limited Liability Company, and ) | |
| DOES 1 THROUGH 20 ) | |
| | |
| Defendants. | |

| |
|---|
| KYOSAY GLOBAL, LLC, an Illinois ) |
| Limited Liability Company, ) |
| ) |
| Defendant/Counter-Plaintiff ) |
| ) |
| vs. ) |
| ) |
| JFS FT LLC, ) |
| ) |
| Plaintiff/Counter-Defendant ) |

**ENTELLI'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS THE AMENDED COMPLAINT**

Entelli Consulting, LLC ("Entelli") files this reply in support of its motion to dismiss the first amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), and in support states as follows:

1

# INTRODUCTION[1]

In its opposition brief, JFS fails to recognize that Entelli is **merely a staffing company** caught in the middle of a commercial dispute between JFS and Kyosay.  As a result of this relationship – and the fact that JFS had the opportunity under the Agreement to screen each of the technical personnel presented by Entelli – the parties expressly agreed that Entelli would not be liable for any later claimed performance issues concerning the technical personnel.  Indeed, the Agreement provides that JFS is required to compensate Entelli until it terminates the Agreement in force between the parties (and that such compensation would constitute adequate performance).  In other words, JFS' option to terminate the Agreement provides it with a fair and reasonable mechanism to address issues of inadequate performance by the technical personnel.  The Agreement also allows JFS to withhold payment and approval of Work Orders if it was at any point not satisfied with the technical personnel's performance.

JFS did none of these things.

Instead, JFS approved the work of the technical personnel by compensating Entelli in the amount of $554,000.  Curiously, JFS now claims that paragraph seven of the Agreement only insulates Entelli from liability arising out of the licensure and qualifications of the technical personnel presented to JFS.  The Agreement, however, clearly dictates that Entelli is not responsible for the quality of the work of the technical personnel because JFS had the

---

[1] As a preliminary matter, Entelli notes that JFS' initial memorandum in support of its opposition to Entelli's motion to dismiss (Doc. 36) did not contain the signature of an attorney in violation of Rule 11.  *See* F.R.C.P. 11 ("Every pleading, written motion, and other paper must be signed by at least one attorney of record in the attorney's name--or by a party personally if the party is unrepresented.").  *See also* S.D.N.Y. Local Rule 11.1(3). Thereafter, JFS abruptly filed an "amended" memorandum in opposition to Entelli's motion to dismiss. (Doc. 41).  An examination of this Court's docket reveals that JFS' amended memorandum was improperly filed without leave of this Court. *See, e.g., Cincinnati Ins. Co. v. Belkin Corp.,* 2008 U.S. Dist. LEXIS 92858 (S.D. Ala. 2008) (amended memorandum was improperly filed without leave of court).  It appears, however, that JFS' amended memorandum is identical to the initial memorandum filed.  If so, Entelli concedes that it has not suffered any prejudice as a result of the amended filing, and does not oppose its filing.  However, it brings this procedural defect to the attention of the Court and JFS pursuant to Rule 11(a).

opportunity to screen each candidate.  In the case of inadequate performance, the Agreement unambiguously allows JFS to terminate the Agreement or withhold approval and compensation, none of which it did.

Finally, the Agreement also dictates that JFS' payments to Entelli constitute acceptance of the technical personnel's work.  JFS does not dispute that this provision exists.  Rather, it contends that paragraph three of the Agreement does not constitute a waiver of liability and/or implied warranties under New York's Uniform Commercial Code.  Unfortunately, for JFS, neither the Uniform Commercial Code nor New York's Uniform Commercial Code apply to the instant contract for services.  Accordingly, its entire argument concerning paragraph three should be disregarded, and its amended complaint dismissed.

## ARGUMENT

### I.  Paragraph Seven of the Agreement Applies and Insulates Entelli From Liability as Alleged in this Case.

#### A.  JFS' "Qualification" Argument Contradicts the Plain Meaning of the Agreement.

JFS contends that paragraph seven of the Agreement does not bar its claims because that provision merely prohibits JFS from bringing suit based upon a candidate's lack of qualifications.  *See* Opposition at 6.  Paragraph 7, however, unambiguously states:

**Because [JFS] has the opportunity to interview all technical personnel located by [Entelli] prior to their commencement of any services for [JFS], [Entelli] shall have no liability to client if such personnel are determined by [JFS] not to meet its requirements and [JFS] shall not be relieved of making payments to [Entelli] for the services provided by such personnel up to the time that they are terminated in accordance with this Agreement.**

This provision clearly means that because JFS has the opportunity to screen each candidate, it is obligated to pay Entelli for work performed unless and until it terminates the Agreement.  In other words, if JFS was unhappy with the performance of the technical personnel, it had the contractual right to terminate under paragraphs 8 and 14 of the Agreement.

3

Entelli urges this Court to recognize that this type of arrangement is commonplace in the staffing industry, and to adopt JFS' position belies common sense. For example, suppose a law firm retains a staffing company to identify and present candidates for an open position for an attorney. The law firm agrees, in writing, to compensate the staffing company if it hires the candidate attorney. After the firm interviews, screens, and hires the attorney subject to its own internal policies and procedures, the attorney commits malpractice or otherwise performs poorly on a client matter. Absent a clear and express agreement to the contrary, the client would not have recourse against the staffing agency for its failure to provide and present a competent attorney to the law firm. Simply put, **no staffing company** would agree to incur that type of liability. This is precisely the scenario that is contemplated by paragraph seven of the Agreement. JFS' recourse, if any, is against Kyosay – the company who managed the project – not the staffing company it retained to present it with candidates for screening.

### B. The Entelli Approach is Consistent With the Letter of the Agreement.

Next, JFS expresses frustration with the practical result of applying paragraph seven in the manner correctly proposed by Entelli. For these reasons, JFS makes the threadbare argument that it is unfair for this Court to apply paragraph seven to bar its claims. However, "[w]hen an agreement is unambiguous on its face, it must be enforced according to the plain meaning of its terms." *Lockheed Martin Corp. v. Retail Holdings, N.V.*, 2011 U.S. App. LEXIS 8491 (2d. Cir. Apr. 26, 2011). Where, as here, a contract is negotiated by sophisticated parties at arm's length, "courts should be extremely reluctant to interpret an agreement as impliedly stating something which the parties have neglected to specifically include." *Vt. Teddy Bear Co., Inc. v. 538 Madison Realty Co.*, 1 N.Y.3d 470, 475, 807 N.E.2d 876, 775 N.Y.S.2d 765, 768 (2004). *See also Beth Isr. Med. Ctr, v. Horizon Blue Cross & Blue Shield of N.J., Inc.*, 448 F.3d 573, 580 (2d

Cir. 2006) ("Under New York law, [c]ourt[s] must enforce contract provisions clearly-expressing parties' intent.").

Here, JFS is simply not relieved of its obligations to pay Entelli until and unless it terminates under the Agreement. It did not terminate the Agreement before providing Entelli with payment thereupon. Moreover, these are sophisticated parties who negotiated this transaction at arm's length. Therefore, Entelli should not now be punished for negotiating an Agreement that protects itself from liability arising out of candidates it presented for hire to JFS.[2]

### C. JFS' Extraneous Factual Assertions Should Not Be Considered by this Court.

Presumably recognizing the longstanding precepts outlined above, JFS makes the gratuitous argument that

…[F]actual question remains of whether or not defendant complied with its obligations under section seven which required defendant to provide JFS with an opportunity to interview the technical personnel. As to this, JFS disputes such fact and states that it neither interviewed any defendant personnel nor was given an opportunity to do so.

*See* Opposition at 8. JFS has not alleged that it was not afforded the opportunity to interview the technical personnel at issue in this case. Because this Court may not generally consider matters outside of the complaint in ruling on a motion pursuant to Fed. R. Civ. P. 12(b)(6), *Executive Photo, Inc. v. Norrell*, 756 F. Supp. 798 (S.D.N.Y. 1991), this Court should not entertain JFS' argument that it did not have the opportunity to screen candidates as set forth under paragraph seven.[3]

---

[2] In the event this Court finds that any part of provision seven is ambiguous, Entelli submits that "where contracts are negotiated by counsel for sophisticated commercial parties, courts should interpret ambiguous language to realize the reasonable expectations of the ordinary businessperson." *See Lama Holding Co. v. Shearman & Sterling*, 758 F. Supp. 159, 163 (S.D.N.Y. 1991). A reasonable businessperson hiring a staffing company to fill its hiring needs would unquestionably understand that the staffing company would not remain responsible for the candidate, *ad infinitum*, after she is hired.

[3] To the extent these assertions are supported by the affidavit of John Finn, Entelli submits that Mr. Finn's Affidavit was improperly submitted and is substantively inadequate as well. *See infra.* Notwithstanding the foregoing, Entelli also submits that time sheets were approved.

5

### D. The Indemnification Provision Has No Effect on Paragraph Three.

Finally, JFS' opposition contains the argument that the mere existence of a "Liability and Indemnification" provision requires this Court to adopt its interpretation of paragraph seven. While paragraph thirteen of the Agreement is entitled "Liability and Indemnification," that paragraph exclusively addresses instances in which Entelli is obligated to indemnifiy JFS for claims made by third parties against JFS. No third party has made any claim against JFS that triggers the contours of paragraph thirteen. Accordingly, the Court should also disregard this argument.

Each of JFS' claims – including its claims for unjust enrichment and breach of a purported warranty – are barred under paragraph seven because they are based upon the allegedly poor performance of Entelli.[4]

## II. JFS' Payment of $554,000 to Entelli Constitutes Approval and Acceptance of the Technical Personnel's Work.

### A. Paragraph Three Does Not "Merely Concern Timely Payment."

JFS argues that paragraph three does not bar its claims against Entelli because the provision "merely" acts as a guide for the process of timely payment for services rendered. *See* Opposition at 9. The Agreement, however, provides that:

**[JFS'] Project Manager or other agent shall review for approval each week the time records of technical personnel on a form provided by [Entelli] to the technical personnel and submitted to [JFS]. [JFS'] approval of such time records…shall constitute acceptance of the work performed by technical personnel and [JFS'] agreement to pay [Entelli] as stated herein.**

---

[4] As set forth in greater detail herein, *see infra*, Counts III, IV, and V should be dismissed because they appear to be premised upon the Uniform Commercial Code (the "UCC"). Neither the UCC nor New York's Uniform Commercial Code ("NYUCC") apply to this contract for services. *See, e.g., Putnam Mills Corp. v. Bradford Dyeing Ass'n,* 677 F. Supp. 148 (S.D.N.Y. 2000). *See also Triangle Underwriters, Inc. v. Honeywell, Inc*., 604 F.2d 737, 742 (2d Cir. 1979) ("If the provision of services or rendering of other performance predominates and is not merely incidental or collateral to the sale of goods, then the U.C.C. does not apply."). *Id*. at 667.

*See* Mtn. to Dismiss., Exhibit A, ¶3.  The language – and, as a result, the meaning – of paragraph three could not be clearer; JFS' approval of time records and subsequent payment to Entelli constitutes acceptance of the "work performed by technical personnel."  JFS makes no claim in its pleading that it withheld approval of time records or payment to Entelli.  To the contrary, it expressly alleges that it provided Entelli with $554,000 for the services provided under the Agreement. Amend. Compl. at ¶ 88.  For these reasons, Entelli submits that JFS effectively approved the adequacy of $554,000 worth of work that it now seeks to reverse in litigation.  As to its unjust enrichment claim, JFS' payment to Entelli establishes – as a matter of law – that the benefit it conferred to Entelli was bequeathed in exchange for $554,000 worth of adequately performed services.

### B. Neither the UCC Nor the NYUCC Apply to This Dispute.

JFS then argues that dismissal of its claims is inappropriate under paragraph three because "'acceptance of the work' [is] a term of art among merchants and defined by the New York Uniform Commercial Code ("NYUCC")."  *See* Opposition at 9.  Under that term and the NYCC in general, JFS makes a variety of claims: (1) that it immediately notified Entelli of the technical personnel's allegedly poor perfomance; (2) that the parties' course of conduct was to "abandon the formal acceptance process described in section three;" (3) that JFS did not sign a single time record; and (4) that JFS routinely communicated to Entelli that it was not satisfied with the technical personnel's work product.  *See* Opposition at 10-13.[5]  None of these factual

---

[5] JFS also makes a convoluted argument regarding waiver.  JFS appears to contend that Entelli's "payment constitutes waiver" argument is without force because Entelli has not "alleged performance" in its motion.  First, it is JFS' duty – not Entelli's – to set forth allegations that state a cause of action.  And second, Entelli need not "allege" performance when JFS' payment effectively acts as approval of Entelli's performance under paragraph three.

7

arguments JFS now makes in its opposition appear in its complaint. For this reason alone, JFS should be required to re-plead its complaint or have it dismissed altogether.

More importantly, the NYUCC does not apply to the Agreement at issue in this case. Indeed, Counts III, IV, and V should be dismissed because they appear to be premised upon the Uniform Commercial Code (the "UCC").[6] Neither the UCC nor New York's Uniform Commercial Code ("NYUCC") apply to this contract for services. *See, e.g., Putnam Mills Corp. v. Bradford Dyeing Ass'n,* 677 F. Supp. 148 (S.D.N.Y. 2000). *See also Triangle Underwriters, Inc. v. Honeywell, Inc.*, 604 F.2d 737, 742 (2d Cir. 1979) ("If the provision of services or rendering of other performance predominates and is not merely incidental or collateral to the sale of goods, then the U.C.C. does not apply."). *Id.* at 667.

There is not a single reference in the Agreement to any sale of goods of any kind by Entelli to JFS, nor has the amended complaint made any meaningful attempt to bring this case within the purview of the NYUCC or UCC.[7] Instead, the Agreement – in numerous places – identifies and describes the type of services to be performed by Entelli for JFS. Where the allegations of a complaint are contradicted by documents incorporated in the complaint, the <u>documents control</u> and the court need not accept the allegations of the complaint as true. *See Sazerac Co., Inc. v. Falk*, 861 F. Supp. 253, 257 (S.D.N.Y. 1994) (citing *Feick v. Fleener*, 653 F.2d 69, 75 & n.4 (2d Cir. 1981) (emphasis added). *See also Matusovsky v. Merrill Lynch*, 186 F. Supp. 2d 397, 400 (S.D.N.Y. 2002) ("allegations . . . contradicted by . . . a document [referenced in the complaint] are insufficient to defeat a motion to dismiss"). *Rapoport v. Asia*

---

[6] The Amended Complaint suggests that JFS' claims arise under the Uniform Commercial Code, whereas its opposition papers indicate that it is New York's Commercial Code that applies. Entelli submits that the pleading fails to allege facts that implicate either statute.

[7] While Entelli recognizes that JFS has made a single passing reference to "software goods" in its amended complaint, see ¶107, the Agreement clearly expresses that the contract between these two parties is an agreement for services.

*Elecs. Holding Co., Inc.*, 88 F. Supp. 2d 179, 184 (S.D.N.Y. 2000) (granting motion to dismiss where "documents [referenced but not attached to complaint] contradict Plaintiff's allegations.").

Accordingly, the clear language of the Agreement supersedes any *de minimis* reference to "goods" in JFS' amended complaint.  In any event, JFS has not set forth facts that – if taken as true – places this case within the grasp of the UCC or the NYUCC.

### D.  This Court Should Not Consider the Finn Affidavit.

In an attempt to raise facts not set forth in its amended complaint, JFS cites to the Affidavit of John Finn.  (Docs. 39 & 40) (the "Affidavit").  As a preliminary matter, however, the Affidavit was neither prepared nor filed in support of JFS' opposition to Entelli's motion to dismiss the amended complaint.  To be sure, the Affidavits appearing at Docket Entries 39 and 40 contain the heading "AFFIDAVIT OF JOHN FINN IN OPPOSITION TO KYOSAY GLOBAL LLC'S, CAMERON REID'S, STEVE BORRE'S, AND FRANK LAZOWSKI'S MOTION TO DISMISS."  (Doc. 39 & 40, p. 1).

**Moreover,** paragraph one of the Affidavit states:

I am the CEO of Plaintiff JFS FT LLC ("JFS") in this action. I am personally familiar with the matters set forth herein and **make this affidavit in opposition to Defendants, Kyosay Global, LLC's, Cameron Reid's, Steve Borre's, and Frank Lazowski's (collectively "Reid/Kyosay") motion to dismiss.**

*Id.* at ¶1 (emphasis added). Thus, the Affidavit does not appear to have been properly submitted for consideration with JFS' opposition to Entelli's motion.[8]

In addition, Mr. Finn's Affidavit does not support the statements made in JFS' brief that cite to the Affidavit.  For example, with regard to paragraph seven of the Agreement JFS argues that "Again, JFS reasonably understood this language to concern only the selection of adequate

---

[8] Entelli has moved separately to strike the Affidavit even though it has taken the position that it was not properly submitted in opposition to its motion to begin with.  In the event this Court concludes that the Affidavit was properly submitted in opposition of Entelli's motion to dismiss, Entelli's separate motion to strike the Affidavit should be granted because Mr. Finn has not stated, under oath, that he has made the Affidavit in opposition to Entelli's motion.

and qualified personnel, but not to relate to the performance and work product of those personnel after their selection." *See* Opposition at 9. In support of that statement, JFS relies upon paragraphs thirteen and fourteen of the Affidavit. Paragraphs thirteen and fourteen of the Affidavit make no mention of Entelli.

As a further example, JFS vigorously argues that it "disputes such fact and states that it neither interviewed any defendant personnel nor was given an opportunity to do so." Because this factual statement does not appear anywhere in the amended complaint, JFS cites to paragraph sixteen of the Affidavit. That paragraph, however, states:

Had I known at the time these statements were false, JFS would not have hired Kyosay. I relied on his advice and opted for the new software application and trusted in his representations that he and his company were able to deliver such an application.

*See* Affidavit, Doc. 40 at ¶17. Clearly, this paragraph has nothing to do with JFS' contention that it was never afforded the opportunity to interview candidates presented to it by Entelli. This pattern of mis-citing to portions of the Affidavit continues throughout JFS' opposition papers.

**Most importantly,** this Court cannot consider the Affidavit submitted by JFS in support of its motion to dismiss. *See, e.g., Cyril v. Neighborhood P'ship II Hous. Dev. Fund, Inc*., 124 Fed. Appx. 26 (2d Cir. 2005). *See also Blue Tree Hotels Inv. (Canada), Ltd. v. Starwood Hotels & Resorts Worldwide, Inc*., 369 F.3d 212, 217 (2d Cir. 2004) (review of motion to dismiss is limited to the facts and allegations that are contained in the complaint and in any documents that are either incorporated into the complaint by reference or attached to the complaint as exhibits). Accordingly, the Affidavit of Mr. Finn cannot be considered by this Court in ruling upon Entelli's motion to dismiss.

## CONCLUSION

WHEREFORE, Entelli Consulting LLC moves for entry of an order dismissing counts II, III, IV, V, and VII of the amended complaint, and any other relief this Court deems just and proper.

Dated: July 5, 2011

                          Respectfully Submitted

                          /s/Vivek Jayaram, Esq.

                         Jayaram Law Group
                         33 N. LaSalle Street
                         Suite 2900
                        Chicago, IL 60602
                        vivek@jayaramlaw.com
                         Tel: 312.454.2859
                         Fax: 312.624.7701
                         Counsel for Entelli Consulting, LLC
                        www.jayaramlaw.com

                        /s David M. Goldstein
                          The Law Offices of David M. Goldstein, Esq.
                          David M. Goldstein (DG-3490)
                          276 Fifth Avenue, Suite 805
                          New York, NY 10001
                          Tel: (212)-541-8260
                          Fax: (212)-477-1731
                          Dmgoldstein.esq@gmail.com